GEORGE H. JOHNSTON, Appellant, Respondent, *v.* THE MACFADDEN NEWSPAPERS CORPORATION, Respondent, Appellant.

SALVATORE F. LACORTE, Appellant, Respondent, *v.* THE MACFADDEN NEWSPAPERS CORPORATION, Respondent, Appellant.

ROCCO M. NITTOLI, Appellant, Respondent, *v.* THE MACFADDEN NEWSPAPERS CORPORATION, Respondent, Appellant.

(Consolidated Cross Appeals.)

First Department, April 7, 1933.

*James Allan Bernson* of counsel [*Deiches, Kaufman & Bernson,* attorneys], for the plaintiffs.

*I. Maurice Wormser* of counsel [*Joseph Schultz* and *Henry E. Schultz* with him on the brief; *Joseph Schultz*, attorney], appearing specially, for the defendant.

MARTIN, J. By these actions the plaintiffs seek to recover damages for the publication of alleged libelous articles on September 26, 1930, in the Philadelphia *Daily News.*

The statements appeared in the headlines of the front page of an issue of the paper and in a story on page 2 thereof. The headline on the front page states: "Judge Mixed up in Brewery Killing." The headline on the second page states: "Note Links Jersey Political Boss and Judge to Brewery Execution," and the subheadline states: "Blowing Off of Lid due as Story is Denied that Slain Agent Had Big Bankroll."

The substance of the alleged libelous article was that the three plaintiffs, together with six other individuals, were in some respects responsible for the killing of Federal Agent John G. Finiello. The article stated: "If you want to know who killed Federal Agent John G. Finiello in the old Rising Sun Brewery last Friday, arrest 1, 2, 3, 4 and 9."

The plaintiff Johnston is described in the article as No. 1. He is the alleged political boss of the county. The plaintiff LaCorte is described as No. 3. He is the district county judge. The plaintiff Nittoli is described as No. 9. He is the son-in-law of the city attorney and the lawyer for the former owners of the brewery.

The defendant in an effort to avoid the jurisdiction of this court moved to vacate the service of the summons and to dismiss the complaint on the ground that defendant was a foreign corporation not engaged in business in this State at the time of the service of the summons and complaint; that it was engaged in interstate commerce and that the plaintiffs are non-residents and the cause of action arose outside the State of New York and, therefore, the court should not take jurisdiction of the subject-matter of the action.

On May 24, 1932, the defendant's motion to vacate the service of the summons was denied, but on reargument the court dismissed the complaint, giving as a reason that "It does not appear that plaintiff will be able to prove publication within this State, but, if proved, such publication would be merely incidental."

Upon the plaintiff's motion to reargue and for leave to serve an amended complaint, the court said: "The motion to vacate service is denied inasmuch as it sufficiently appears that defendant's

business is transacted from New York City, the headquarters of the business group which includes defendant. The motion to dismiss is granted, neither the complaint nor the proposed amended complaint alleging publication within the State of New York. The motion for leave to serve the proposed amended complaint is denied."

The defendant received authority to do business in this State on January 25, 1926; it admittedly did business here thereafter, maintaining a bank account for some time. On the masthead of the newspaper the following appeared: "New York Office — 2716 Graybar Building." The New York telephone book contains a listing of the defendant corporation at 1926 Broadway, New York city. Both the president of the company and its secretary have their permanent offices here and are residents of this State.

On March 10, 1932, an unknown person in the office of the defendant in New York city was served with a summons. It is stated in one of the affidavits in opposition to this motion to vacate the service that the attorney for defendant agreed that if the papers so served were withdrawn, the secretary of the defendant company would be made available for service of the summonses and complaints. On March 23, 1932, the summonses were served on the secretary. Prior to the service on the secretary, but after the above arrangement had been made, the defendant attempted to withdraw its certificate under which it was doing business within the State. The facts disclosed by the record show that the service was proper and should, therefore, be sustained. (*Tauza* v. *Susquehanna Coal Co.*, 220 N. Y. 259.)

We are also of the opinion that the orders dismissing the complaints upon the ground that there is no allegation of publication within the State of New York cannot be sustained. The orders to that effect should be reversed, and the plaintiffs permitted to serve the proposed pleadings.

The amended complaints which plaintiffs wish to serve contain in paragraph "eleventh" the following: "That the said daily newspaper, known as and called the 'Philadelphia Daily News' and containing the said false and malicious statements, was printed, published and circulated by the defendant on the 26th day of September, 1930, and was widely published and circulated by defendant among and read by the persons named in the said letter, their friends and acquaintances, and generally circulated in the State of New York and elsewhere."

If the allegation of publication is sufficient, the court should have granted permission to the plaintiffs to serve the amended

complaint. An allegation of wide circulation in New York State is a sufficient allegation.

In *Vitolo* v. *Bee Publishing Co.* (66 App. Div. 582) the court said: " It sufficiently appears that the cause of action arose within the State, because the alleged libelous article was circulated here by sale of the defendant's paper."

In the present case the complaint alleges that the paper containing the alleged libelous article was circulated in the State of New York. In *Weir* v. *Brotherhood of Railroad Trainmen* (221 Ala. 494) the court said: " Libelous matter uttered through the mails is actionable either at the place of posting or at the place of receipt by the addressee. *Kennedy* v. *Gurley*, 208 Ala. 623."

In Fraser on Law of Libel and Slander ([5th ed.] p. 27), in reference to publication, the writer sets forth the law as follows: " Where the libel is contained in a newspaper, the sale of each copy of the newspaper containing the libel is *prima facie* a publication thereof."

The general rule is that an action for libel may be brought and tried in any county or State in which the libel is published or circulated. (*Bailey* v. *Chapman*, 15 Tex. Civ. App. 240; 38 S. W. 544.) Civil actions for libel are transitory in their nature and it is very generally held that such actions may be brought in any jurisdiction where the libelous article was published or circulated even though the article was written and printed elsewhere. (*Belo & Co.* v. *Wren*, 63 Tex. 686; *Haskell* v. *Bailey*, 63 Fed. 873; 3 Greenl. Ev. [16th ed.] § 173.)

In *Irvine* v. *Duvernay* (4 Que. L. R. 85) the court said: " The simple question comes to this — does a person who mails in Montreal libelous matter to a number of individuals and to public reading rooms in Quebec, who receive and read the same, publish that matter in Quebec.

" I am of the opinion that he does and am borne out by decisions in England which would seem to have been adopted in the United States."

The argument that at the trial the plaintiffs will not be able to prove publication is not an answer to the proposition here involved. That is a matter to be determined at the trial. Upon this appeal we are not called upon to say what may be proved.

If a plaintiff has a good cause of action which arose in the State of New York against a corporation not doing business in New York State the courts should take jurisdiction. (Gen. Corp. Law, § 225, subd. 3; *Wester* v. *Casein Co. of America*, 206 N. Y. 506; *Bennett* v. *Austro-Americana S. S. Co.*, 161 App. Div. 753; *Griesa* v. *Massachusetts Benefit Assn.*, 15 N. Y. Supp. 71; 60 Hun, 581; affd., 133 N. Y. 619.)

The orders in so far as they deny the motions to vacate the

service of the summons and complaints should be affirmed, the judgments reversed, with costs to the plaintiffs, and the orders in so far as they dismiss the complaints and deny leave to the plaintiffs to serve the proposed amended complaints should be reversed, and the motions for leave to serve the proposed amended complaints granted.

FINCH, P. J., and SHERMAN, J., concur; O'MALLEY and TOWNLEY, JJ., dissent.

O'MALLEY, J. (dissenting). Three questions are here presented. First, was the defendant properly served with process in this jurisdiction? If so, should the court retain jurisdiction of the cause of action contained in the original complaint? And finally, should the Special Term have permitted the service of a proposed amended complaint?

The plaintiff is a non-resident. The defendant corporation, organized under the laws of Delaware, has its principal place of business in Philadelphia, Penn. Objection to the service is predicated upon the contention that the defendant was not doing business within this State at the time of the attempted service of process upon its secretary in this jurisdiction.

It is conceded that some time in January, 1926, the defendant filed a certificate and obtained permission to do business in this State. It maintained a bank account here for some time and was engaged in a stock selling plan. By affidavits submitted the defendant seeks to show that its activity here was limited solely to this business of stock selling, its certificate to do business having been secured for such purpose, and that it had entirely ceased doing any business whatever here as early as 1928.

Upon the proof before us we are of opinion that the Special Term properly refused to vacate the service. Defendant at one time was doing business in this State. A condition once shown to exist is presumed to continue until the contrary is shown. (*Currie* v. *International Magazine Co., Inc.*, 256 N. Y. 106, 111; *Di Ionna* v. *Terry & Tench Co., Inc.*, 203 App. Div. 270; *Burke* v. *City & County Contract Co.*, 133 id. 113.) Moreover, it appears that the defendant's secretary, on whom service was made, and its president both have offices in this State; that the newspaper published by the defendant refers in its " masthead " to a New York office; that the New York city telephone directory has a listing of the defendant; and that certain mail facilities are furnished to defendant here. In addition the certificate of authority to do business here was not surrendered by the defendant until after an abortive attempted service in the present action was made. These facts, it seems to us. were sufficient to justify denial of the motion to vacate the service

The original complaint was dismissed on the ground that the court should not assume jurisdiction. Both plaintiff and defendant are non-residents. The cause of action for libel pleaded in the original complaint arose without this State. In the present circumstances the court was vested with discretion to refuse jurisdiction. (*Gregonis* v. *Philadelphia & Reading Coal & Iron Co.,* 235 N. Y. 152; *Murnan* v. *Wabash Railway Co.,* 246 id. 244.) We are of opinion that the court's discretion was wisely exercised and we affirm the dismissal of the original complaint in our own discretion.

We are further of opinion that the Special Term properly refused permission to serve the proposed amended complaint. This purported to plead a cause of action arising in this State. Paragraph eleventh of such proposed complaint, which it is contended pleads a cause of action arising in this jurisdiction, reads:

" *Eleventh.* That the said daily newspaper, known as and called the ' Philadelphia Daily News ' and containing the said false and malicious statements, was printed, published and circulated by the defendant on the 26th day of September, 1930, and was widely published and circulated by defendant among and read by the persons named in the said letter, their friends and acquaintances, *and generally circulated in the State of New York and elsewhere.*" (Italics ours.)

In our opinion this paragraph does not plead a cause of action in this State. It should be pleaded without equivocation or doubt that the article complained of was published by *the defendant* in this jurisdiction; that *the defendant* circulated in this State the paper containing the libelous matter; and that it was read by persons in this State. (*Prescott* v. *Tousey,* 50 N. Y. Super. Ct. [18 J. & S.] 12; *Youmans* v. *Smith,* 153 N. Y. 214; *Gerstein, Inc.,* v. *New York Evening Journal, Inc.,* 236 App. Div. 446.) The italicized portion of the pleading appears to have been phrased so as to purposely avoid the requirement we have noted.

It follows that the judgment and order should be affirmed, with costs to the defendant, but with leave to plaintiffs, if they be so advised, to serve a complaint in conformity with this opinion.

TOWNLEY, J., concurs.

Judgments reversed, with costs to the plaintiffs. Orders appealed from, in so far as they deny the motions to vacate service of the summons and complaints, affirmed; in so far as they grant defendant's motions to dismiss the complaints, reversed and said motions denied; and in so far as said orders deny plaintiffs' motions for leave to serve the proposed amended complaints, reversed and said motions granted.